UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
 ----------------------------------------------------------- X
ANTHONY ZAPPIN,

                                        Plaintiff,                    Case No. 1:19-cv-10573
                                                                      (Case No. 1:19-cv-3781 related)

                          - against -
                                                                      **FIRST AMENDED
                                                                      COMPLAINT**
JORGE DOPICO,
ERNEST COLLAZO,                                                       Jury Trial Demanded

                                        Defendants.
 ----------------------------------------------------------- X

        Plaintiff Anthony Zappin ("Zappin"), proceeding *pro se*, hereby alleges the following

against Defendant Jorge Dopico ("Dopico") and Defendant Ernest Collazo ("Collazo")

(collectively, "Defendants"):

                              <u>**INTRODUCTION**</u>

        1.      The Attorney Grievance Committee for the First Judicial Department (hereinafter

"Grievance Committee"), led by Defendant Jorge Dopico (its Chief Attorney) and Defendant

Ernest Collazo (its Chair), is nothing more than a fundamentally unethical skunkworks operation.

This assertion needs no more evidence than the fact that Grievance Committee has engineered a

fundamentally unconstitutional weapon to prosecute attorneys – the vast majority of whom have

done nothing wrong other than simply catching the ire of the corrupt state judicial system or one

of its judges – without affording them even the most basic tenets of Due Process, notably notice

and a fair opportunity to be heard.  Indeed, this weapon is found nowhere in the Rules Governing

Attorney Discipline Matters codified in 22 NYCRR 1240 *et seq*.  In fact, this weapon is a total

end-run around those rules.  To make matters worse, this weapon is governed by no rules

whatsoever.  The Grievance Committee uses this weapon to deny targeted attorneys formal

charges, contested hearings before the disciplinary authority and even a fact-finder in their case,

all fundamental requirements of Due Process.  Even worse, attorneys who are the subject of this weapon are afforded substantially less process and safeguards than attorneys subject to attorney discipline after being convicted of a crime.  What is this weapon called?  Collateral estoppel attorney disciplinary proceedings, which are being used to discipline and disbar attorneys based on mere civil findings.  As set forth below, these proceedings fundamentally violate Due Process and are facially unconstitutional.  Consequently, Plaintiff respectfully asks this Court to extinguish this unlawful weapon, declare collateral estoppel proceedings in the First Department facially unconstitutional and put an end to Grievance Committee's continued abuse of power and its flaunting of the rules and attorneys' right to Due Process.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over Plaintiff's claims against Defendants Jorge Dopico and Ernest Collazo pursuant to 28 U.S.C. § 1331 as this matter involves a federal question concerning the constitutionality of a pattern and policy of conduct and procedures used in New York State attorney disciplinary proceedings.

3.      Further, this Court has subject matter jurisdiction over Plaintiff's claims against Defendants Jorge Dopico and Ernest Collazo pursuant to 28 U.S.C. § 1331 as this matter involves a federal question seeking redress under 42 U.S.C. § 1983 for violations of Plaintiff's constitutional and civil rights.

4.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this Judicial District.

2

## THE PARTIES

5.      Plaintiff Anthony Zappin is a resident of the State of West Virginia.  He was the respondent in the attorney disciplinary proceeding filed in the Supreme Court of the State of New York, Appellate Division First Department (hereinafter, the "First Department") in April 2016 captioned *Matter of Anthony Jacob Zappin*.  As a result of the New York attorney disciplinary proceeding, Zappin is now the respondent in a reciprocal disciplinary proceeding in the State of West Virginia captioned *Lawyer Disciplinary Board v. Anthony J. Zappin*, Case No. 18-0250, which was brought against him pursuant to Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure.

6.      Defendant Jorge Dopico is a New York State official and is employed as the Chief Attorney for the Attorney Grievance Committee for the First Judicial Department.  Upon information and belief, Dopico is responsible for and oversees all investigations and charging decisions made in attorney disciplinary proceedings in the First Department.  Further, upon information and belief, he oversees all cases filed on behalf of the Grievance Committee in the First Department.  Most importantly, upon information and belief, Dopico is responsible for overseeing the policies and the procedures of the Grievance Committee in bringing attorney disciplinary matters on behalf of the Grievance Committee.  This includes ensuring compliance with existing statutes, rules, and policies, which includes 22 NYCRR 1240 *et seq*.  Zappin brings this action against Dopico in his official capacity as Chief Attorney for the Attorney Grievance Committee for the First Judicial Department seeking declaratory relief.  Zappin further brings this action against Dopico in his individual capacity seeking redress for violations of Plaintiff's civil and constitutionals rights.

7.     Defendant Ernest Collazo is a New York State official serving as the Co-Chair of the Attorney Grievance Committee for the First Judicial Department.[1]  Upon information and belief, Collazo is responsible for overseeing the affairs of the Grievance Committee as well as the conduct of its employees.  Zappin brings this action against Collazo both in his official capacity seeking declaratory relief.  Zappin further brings this action against Dopico in his individual capacity seeking redress for violations of Plaintiff's civil and constitutionals rights.

## FACTUAL ALLEGATIONS

### I.     Background

#### A.     The Collateral Estoppel Disciplinary Proceeding Filed Against Zappin

8.     On April 22, 2016, the Grievance Committee filed a petition in the First Department, which was signed by Dopico and attested to under oath by Collazo, seeking declaratory relief that Plaintiff should be found guilty of attorney misconduct without a hearing on the merits and requesting  that the matter be "refer[ed] … back to the [Grievance Committee] for a hearing solely to consider evidence in aggravation or mitigation, if any, and for a recommendation by the [Grievance] Committee of the appropriate sanction to be imposed upon [Zappin] …."  (*See* Ex. 1, April 22, 2016 Collateral Estoppel Petition.)  More specifically, the Grievance Committee requested that the First Department apply offensive collateral estoppel to certain specified findings in a February 29, 2016 child custody decision issued by Justice Matthew F. Cooper ("Justice Cooper") in Zappin's personal divorce case, *Anthony Zappin v. Claire Comfort*, Index No. 301568-2014 filed in New York County Supreme Court (hereinafter, "*Zappin v. Comfort*").   Notably, the April 22, 2016 Collateral Estoppel Petition was filed against Zappin

---

[1] At the time *Matter of Zappin* was filed in the First Department, Collazo was the sole chair of the Grievance Committee.

in direct contravention of the Grievance Committee's own rules set forth in 22 NYCRR 1240 *et seq*. requiring that an attorney be served formal charges and entitling the attorney to a hearing on the merits.   In other words, the Grievance Committee failed to comply with the rules and requirements of 22 NYCRR 1240 *et seq* in initiating the collateral estoppel attorney disciplinary proceeding against Zappin and instead manufactured a proceeding essentially without rules and wholly outside the scope of 22 NYCRR 1240 *et seq*.

9.    As explained more fully below, Justice Cooper wholly fabricated findings in the February 29, 2016 child custody decision and, in essence, falsified the decision.   Justice Cooper's actions were undertaken in an apparent effort to retaliate against Zappin for at least the following:

i.    For exercising his constitutional right to seek redress by filing a lawsuit in the New York Court of Claims against Justice Deborah Kaplan in connection with the brutal assault Zappin suffered in her courtroom (*see* Ex. 2, Zappin Court of Claims Complaint), which resulted in her reassignment to an administrative position in the New York Unified Court System;

ii.    For locating and distributing pursuant to his First Amendment right a transcript of Justice Deborah Kaplan's testimony in her father's organized crime criminal trial conducted in the United States District Court for the Eastern District of New York where it is suggested that she may be implicated in her father's criminal affairs and in which she aggressively disparaged a domestic violence victim testifying against her father;

iii.    For criticizing and legally challenging the unethical actions and attorney misconduct of the Attorney for the Child Harriet Newman Cohen, an individual deeply entrenched in the corruption of the matrimonial bar and who provided

substantial financial support to both Justice Kaplan and Justice Cooper in their election to the bench; and

iv.     Most importantly, for posting in accordance with his First Amendment rights a series of videos clips to YouTube taken from CLE presentations conducted by the New York Women's Bar Association in which Justice Cooper made highly inappropriate, extremely unethical and discriminatory remarks.[2]

Indeed, Justice Cooper fabricated findings in the February 29, 2016 child custody decision in coordination with the Grievance Committee, namely staff attorney Kevin Doyle and Defendant Dopico, with the specific intent that a collateral estoppel disciplinary proceeding would be lodged against Zappin based on those fabricated findings.

10.    As mentioned above, Zappin was (unconstitutionally) denied a hearing on the merits before the Grievance Committee as to the assertions of misconduct in the April 22, 2016 Collateral Estoppel Petition.  The egregiousness of the fact that Zappin was denied an opportunity to defend himself on the merits before the Grievance Committee was compounded by the following:

•    With the exception of Claire Comfort's family offense allegations, Zappin was never afforded notice (or an opportunity to defend himself) that he would be subject to the findings relied upon by the Grievance Committee during the child custody proceedings.  Likewise, Zappin was never afforded notice that he may be subject to disciplinary action – much less that he could be collaterally estopped from challenging Justice Cooper's findings in a disciplinary proceeding – during the

---

[2]     The videos of Justice Matthew F. Cooper can be found at https://www.youtube.com/channel/UCz5ceNeH6KycSayEfTAhB2g.

child custody proceedings.   These facts were shockingly uncontested by the Grievance Committee during the collateral estoppel disciplinary proceeding filed against Zappin.  (*See* Ex. 3, Zappin Motion; Ex. 4, Doyle Opposition.)  Likewise, these facts were not contested by Ms. Comfort (Zappin's ex-wife and defendant in the underlying matrimonial action) in subsequent child custody modification proceedings.  (*See* Ex. 5, Zappin Motion and Supplemental Memorandum; Ex. 6, Comfort Opposition.)   Yet, the Grievance Committee unethically continued to pursue the imposition of attorney discipline despite being well-aware that Zappin was denied his constitutional right to fair notice.

- With respect to Claire Comfort's family offense allegations, Zappin was denied a full and fair opportunity to defend himself.  Without any legal justification, Justice Cooper categorically and systemically excluded any and all relevant and material evidence necessary for Zappin's defense.  This included: (i) three (3) eye-witnesses with information and relevant testimony disproving Claire Comfort's allegations; (ii) the metadata to Claire Comfort's photographs introduced into evidence at the child custody trial in support of her allegations which showed that the photographs had been digitally altered and that they were not taken on the dates she testified that they were; (iii) subpoenaed video footage from the Time Warner Center showing Claire Comfort physically attacking Zappin and striking their child; and (iv) authenticated photographs and text messages indisputably proving Claire Comfort's allegations were false.  Again, the Grievance Committee shockingly did not dispute any of these facts.  (*See* Ex. 3, Zappin Motion; Ex. 4, Doyle Opposition.)  Likewise, these facts were not contested by Ms. Comfort (Zappin's ex-wife and

7

defendant in the underlying matrimonial action) in subsequent child custody modification proceedings. (*See* Ex. 5, Zappin Motion and Supplemental Memorandum; Ex. 6, Comfort Opposition.) Yet, the Grievance Committee unethically continued to pursue the imposition of attorney discipline despite being well-aware that Zappin was denied his fundamental right to evidence and a fair opportunity to defend himself.

- The record made apparent that Justice Cooper was not an impartial arbiter. While Justice Cooper engaged in extremely inappropriate and abusive behavior throughout the proceedings, his deep-seated antagonism towards Zappin was well on display by the fact that he engaged in extrajudicial conduct by admittedly personally disseminating a statutorily sealed September 18, 2015 sanctions decision to the press (*e.g.*, The New York Law Journal, The New York Post and The Daily News) in an effort to publicly inflict undue personal and professional harm on Zappin. Moreover, the September 18, 2015 sanctions decision contained verifiably false assertions by Justice Cooper intended to portray Zappin in a negative and, more importantly, a false light. Again, the Grievance Committee shockingly did not dispute any of these facts during the collateral estoppel disciplinary proceeding. (*See* Ex. 3, Zappin Motion; Ex. 4, Doyle Opposition.) Likewise, these facts were not contested by Ms. Comfort (Zappin's ex-wife and defendant in the underlying matrimonial action) in subsequent child custody modification proceedings. (*See* Ex. 5, Zappin Motion and Supplemental Memorandum; Ex. 6, Comfort Opposition.) Nonetheless, the Grievance Committee unethically continued to

pursue the imposition of attorney discipline despite being well-aware that Zappin was denied his constitutional right to a fair and impartial arbiter.

Indeed, the record from the collateral estoppel disciplinary proceedings makes it unequivocally apparent that Zappin was denied his most basic right of notice and a fair opportunity to be heard.

11.     Zappin opposed the April 22, 2016 Collateral Estoppel Petition.  Of important note, Zappin requested that the proceeding be stayed until such time that he could appeal Justice Cooper's February 29, 2016 child custody decision.  The request was made so that Zappin's appeal of the February 29, 2016 child custody decision would not be effectively predetermined by the First Department deciding the Grievance Committee's April 22, 2016 Collateral Estoppel Petition. Indeed, such a situation would unfairly and prejudicially permit a dependent proceeding to effect the outcome of an independent proceeding.

12.     On October 17, 2016, the First Department issued a two (2) sentence order granting the Grievance Committee's April 22, 2016 Collateral Estoppel Petition.  (*See* Ex. 7, October 17, 2016 Order.)  The First Department failed to explain in any way why the application of collateral estoppel was appropriate.  (*See id*.)  In fact, the order provided no recitation of the facts, discussion, legal analysis or even specific findings of any kind.  (*See id*.)  Rather, it simply lists the Rules of Professional Conduct that it found Zappin guilty of violating.  (*See id*.) It must be further noted that the October 17, 2016 order found Zappin guilty of seven (7) violations of the Rules of Professional Conduct without specifying which factual findings by Justice Cooper it relied on in finding Zappin guilty of the violations.   Such a vague decision fundamentally and unconstitutionally interfered with Zappin's right to appeal, his right to challenge the decision in foreign jurisdictions where reciprocal disciplinary proceedings may be brought against him and, most importantly, with his right to defend himself at the subsequent sanction hearing where he was

not provided the precise factual basis that the First Department found to be in violation of the rules. Notably, the Grievance Committee has conceded that such perfunctory one (1) and two (2) sentence decisions are routine in collateral estoppel attorney disciplinary proceedings. (*See* Ex. 8, Doyle Opposition.)

13.     Most egregious, however, the First Department granted the April 22, 2016 Collateral Estoppel Petition without first allowing Zappin to appeal the underlying February 29, 2016 child custody decision in *Zappin v. Comfort*, consequently predetermining and interfering with his appeal in that independent proceeding.  To put it another way, the First Department issued an adverse decision against Zappin in a dependent proceeding that substantially interfered with and predetermined Zappin's appeal in an independent proceeding.

14.     A sanction hearing was held before Referee Martin Gold in December 2016. Zappin introduced a handful of character letters as well as a letter from his treating therapist. However, Zappin was fundamentally prejudiced and placed in a constitutionally tenable situation. More specifically, Zappin did not testify at the hearing.  On advice of counsel, Zappin stayed silent because his appeal of the underlying February 29, 2016 child custody decision in *Zappin v. Comfort* (upon which the collateral estoppel disciplinary proceeding was based) was pending before the First Department in which he was directly contesting the findings relied upon by the Grievance Committee in its April 22, 2016 Collateral Estoppel Petition.  Both Referee Martin Gold and the First Department unconstitutionally used Zappin's silence at the sanction hearing as evidence of a "lack of remorse."   In other words, Zappin's exercise of his right to appeal was unlawfully and unconstitutionally cited against him as an aggravating factor.

15.     On August 3, 2016, Referee Gold issued a report (ghost written by the Grievance Committee) recommending that the Grievance Committee's position that Zappin be disbarred be

adopted by the First Department.  In the perfunctory report devoid of any real analysis or discussion, Referee Gold made numerous assertions of misconduct levied at Zappin not contained in the April 22, 2016 Collateral Estoppel Petition, which Zappin was never afforded notice of or an opportunity to contest at any point in either the *Zappin v. Comfort* proceeding or the collateral estoppel disciplinary proceeding.  These assertions (almost all entirely false) included, but were not limited to the following:  (i) that Zappin "made numerous abusive and threatening statements, both in and out of court, about his wife and her father" (*see* Ex. 9, Gold Report); (ii) that Zappin "filed a false police report in Washington, D.C. asserting that his wife had physically attacked him" (*id*. at 4); and (iii) that Zappin "made threatening, disrespectful and false accusations disrupting judicial proceedings, concerning Judge Epstein in Washington, D.C., and Justice Cooper and Justice Kaplan in Supreme Court, New York County" (*id.* at 4).

16.     On March 8, 2018, the First Department issued a decision and order confirming Referee Gold's Report.  (*See* Ex. 10, March 3, 2018 Decision and Order.)  In its decision, the First Department wholly ignored Respondent numerous constitutional and factual arguments.  (*See* Ex. 11, Zappin Opposition to Motion to Confirm; Ex. 12, Zappin Motion to Vacate.)  In comparing Zappin's papers to the March 8, 2018 Decision and Order it is apparent that in at least three (3) spots in the decision, the First Department knowingly and deliberately and verifiably misrepresented and/or outright lied about Zappin's legal arguments and conduct in the collateral estoppel disciplinary proceeding.

17.     Most egregious, the First Department contrived and cited nearly a dozen assertions of misconduct levied at Zappin which were not contained in the April 22, 2016 Collateral Estoppel Petition and which Zappin was never afforded notice of or an opportunity to contest either in the

*Zappin v. Comfort* matrimonial proceeding or at any point in the collateral estoppel disciplinary proceeding.  These assertions included, but are not limited to:

- That Zappin "beginning in April 2014, engaged in acts that repeatedly demonstrated disrespect for the court and counsel, by, *inter alia*, flouting the judicial directives of threes judges (a judge of the District of Columbia Superior Court, the original matrimonial judge and the matrimonial judge who made these findings" (Ex. 10, March 8, 2018 Decision at Order at 2, 7);

- That Zappin "set[] up a fake website about the attorney for the child by registering her name as a domain name and posting derogatory messages about her on it" (*id*. at 2, 6);

- That Zappin "baselessly fil[ed] a disciplinary complaint against a court-appointed psychiatric expert witness" (*id*. at 2, 7);

- That Zappin "had attempted to publicly defame the attorney for the child" (*id*. at 2, 7);

- That Zappin "fil[ed] … a police report falsely accusing his wife of committing acts of domestic violence" (*id*. at 3, 7); and

- That Zappin admitted to "engaging in threatening behavior toward the matrimonial judge" (*id*. at 5).

The fact that Zappin was denied notice and an opportunity to defend himself with respect to these assertions of misconduct levied in the March 8, 2018 Decision and Order is not uncontested by the Grievance Committee.  And, more importantly, each of these unnoticed assertions of attorney misconduct lodged at Zappin out-of-the-blue in the March 8, 2018 decision are verifiably and provable false.

      B.    The West Virginia Reciprocal Disciplinary Proceeding

      18.    Zappin is also admitted to practice law in the State of West Virginia.  Pursuant to West Virginia law, Zappin notified the West Virginia Office of Disciplinary Counsel (hereinafter, "WV Bar Counsel") of the First Department's March 8, 2018 decision and order on March 19, 2018.  In that letter, Zappin formally asserted that he would contest the imposition of reciprocal

discipline based on the fact he was denied Due Process in the New York collateral estoppel disciplinary action and that the evidence upon which he was disciplined is infirm. (*See* Ex. 13, WV Notice of Reciprocal Disciplinary Action.) That same day, pursuant to Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure, WV Bar Counsel instituted a reciprocal disciplinary proceeding and asked that identical discipline be imposed. (*See id*.)

19.     Pursuant to West Virginia law, Zappin was entitled to a hearing before a Lawyer Disciplinary Hearing Subcommittee in the reciprocal disciplinary action – something which he was denied in New York. Prior to the hearing, West Virginia Bar Counsel received an entire copy of the record from the New York collateral estoppel disciplinary action as well as the entire record from the child custody proceedings in *Zappin v. Comfort*. The West Virginia hearing confirmed Zappin's repeated contentions that the New York collateral estoppel disciplinary proceeding violated Due Process, that Justice Cooper was not an impartial arbiter and, more importantly, that he had fabricated and falsified findings in his February 29, 2016 custody decision used in New York to impose discipline on him.

20.     With respect to the constitutionality of the New York collateral estoppel disciplinary action, the following took place at the West Virginia hearing:

- Zappin submitted to the Hearing Subcommittee that he did not receive a hearing to raise defenses, call witnesses and offer evidence, much less a hearing on the merits as to the assertion of misconduct levied against him in the New York disciplinary proceeding, which infringed on his right to Due Process. (*See* Ex. 14, WV Hearing Transcript.) This was not contested by West Virginia Bar Counsel. (*See id*.)

- Zappin submitted to the Hearing Subcommittee that he was not afforded formal notice of disciplinary charges in the New York collateral estoppel proceeding in

violation of the New York Rules for Attorney Disciplinary Matters codified in 22
NYCRR 1240 *et seq.* and United States Supreme Court precedent as set forth in *In
re Ruffalo*, 390 U.S. 544 (1968).  (*See* Ex. 14, WV Hearing Transcript.)  This was
not contested by West Virginia Bar Counsel.

- Zappin submitted that during the underlying matrimonial action that apart from
  Claire Comfort's family offense allegations that he was not afforded notice or an
  opportunity to be heard with respect to the findings from the child custody decision
  that the Grievance Committee relied on in its April 22, 2016 Collateral Estoppel
  Petition.  (*See* Ex. 14, WV Hearing Transcript.)  This was not contested by West
  Virginia Bar Counsel.  (*See id*.)  More specifically, West Virginia Bar Counsel
  failed to point to anywhere in the record in *Zappin v. Comfort* where Zappin was
  afforded notice he was subject to the findings relied upon by the Grievance
  Committee in the April 22, 2016 Collateral Estoppel Petition.  (*See id*.)

- Zappin submitted that during the underlying matrimonial action that he was not
  afforded a full and fair opportunity to defend against Claire Comfort's family
  offense allegations.  (*See* Ex. 14, WV Hearing Transcript.)  More specifically,
  Zappin asserted and presented extensive evidence that he was denied access to
  highly relevant evidence necessary to his defense of the family offense allegations
  and that he was not permitted to call witnesses with highly relevant testimony
  likewise necessary to his defense (and in support of his family offense allegations
  against Claire Comfort).  (*See supra* at ¶ 10, Bullet 2.)  Moreover, Zappin asserted
  that he was unfairly and unconstitutionally denied a fair right to defend himself
  where he was forced to put on his defense evidence as to Ms. Comfort's allegations

14

of domestic violence <u>before</u> her testimony in her case-in-chief and Zappin was precluded by Justice Cooper from introducing rebuttal evidence in his defense as to her allegations of domestic violence after her testimony in her case-in-chief.[3] These facts were not contested by West Virginia Bar Counsel.  (*See id.*)

21.    With respect to Justice Cooper's partiality during the *Zappin v. Comfort* proceedings, the following took place at the West Virginia hearing:

- Zappin submitted that Justice Cooper was not an impartial arbiter.  (*See* Ex. 14, WV Hearing Transcript.)  In support of this position, Zappin presented evidence that he had repeatedly and verifiably fabricated findings across numerous orders, that he had been found to have engaged in extrajudicial conduct by disseminating statutorily sealed decisions from the child custody matter to the press and that he had engaged in outright abusive behavior towards Zappin during the child custody proceedings calling into question the fairness of the proceeding (which included taunting, provoking and goading Zappin).  (*See id.*)  These facts and evidence were wholly uncontested by West Virginia Bar Counsel.  (*See id.*)

22.    Most notable, though, was Zappin's presentation and evidence concerning the infirmity of evidence in the New York collateral estoppel disciplinary proceeding.  Specifically, with respect to the issue of the infirmity of evidence upon which Zappin was found guilty of attorney misconduct in New York, the following occurred at the West Virginia hearing:

- In the New York disciplinary order, the First Department disciplined Zappin based on Justice Cooper's finding that he fabricated text messages and entered them into

---

[3] Notably, Ms. Comfort wildly changed her allegations in her testimony during her case-in-chief than what she had previously sworn to in prior petitions and motions.

evidence at the child custody trial in *Zappin v. Comfort*.  (*See* Ex. 1, April 22, 2016 Collateral Estoppel Petition; Ex. 10, March 8, 2018 Decision and Order.)  Zappin presented testimony and evidence that the text messages Justice Cooper asserted that Zappin falsified in the February 29, 2016 child custody decision were never entered into evidence at the custody trial and, with one exception, the text messages do not even exist.  (*See* Ex. 14, WV Hearing Transcript.)  This evidence and testimony were not contested by West Virginia Bar Counsel.  (*See id*.)

- Moreover, a November 9, 2013 text message exchanged between Zappin and Ms. Comfort that was in dispute between the parties at the child custody trial, which Justice Cooper claimed Zappin "falsified" without any technical evidence to support that conclusion.   (*See* Ex. 1, April 22, 2016 Collateral Estoppel Petition; Ex. 10, March 8, 2018 Decision and Order.)  Zappin presented evidence that Ms. Comfort had apparently inadvertently presented to the New York court two different versions of the November 9, 2013 text message with different text confirming she had falsified her version.  (*See* Ex. 14, WV Hearing Transcript.) Meanwhile, Zappin's version of the November 9, 2013 text message was presented on his iPad device whose file system was encrypted precluding any ability to alter the text message on his device.  (*See id*.)  Consequently, it was apparent that Ms. Comfort had falsified her versions of the November 9, 2013 text message. This evidence and testimony were not contested by West Virginia Bar Counsel.  (*See id*.)

- In the New York disciplinary order, the First Department disciplined Zappin based on Justice Cooper's finding that he gave false testimony during the February 29,

2016 child custody trial in *Zappin v. Comfort*. (*See* Ex. 1, April 22, 2016 Collateral Estoppel Petition; Ex. 10, March 8, 2018 Decision and Order.) Zappin presented testimony and evidence that the instances of "false testimony" Justice Cooper cited in his child custody decision were nowhere in the transcripts and that he never gave the cited testimony. (*See* Ex. 14, WV Hearing Transcript.) In other words, Justice Cooper corruptly and falsely attributed testimony to Zappin in the February 29, 2016 child custody decision and then went on to make findings that Zappin testified falsely at the custody trial based on the this falsely attributed testimony. This evidence and testimony were not contested by West Virginia Bar Counsel. (*See id*.)

- In the New York disciplinary order, the First Department asserted that Zappin induced Dr. William Manion, an expert that he retained, to give false testimony at the child custody trial in *Zappin v. Comfort* based on Justice Cooper's assertion that Dr. Manion testified that Zappin wrote his expert report. (*See* Ex. 1, April 22, 2016 Collateral Estoppel Petition; Ex. 10, March 8, 2018 Decision and Order.) Zappin presented testimony and evidence that Dr. Manion never gave such testimony. (*See* Ex. 14, WV Hearing Transcript.) In fact, the transcript from the child custody trial confirmed the opposite, that Dr. Manion testified that he alone wrote his report. (*See id*.) This evidence and testimony were not contested by West Virginia Bar Counsel. (*See id*.)

- In the New York disciplinary order, the First Department asserted that Zappin "flouted" directives and court orders issued in New York and the District of Columbia during the *Zappin v. Comfort* child custody proceedings. (*See* Ex. 10,

March 8, 2018 Decision and Order.)   Zappin presented evidence and testimony
that he was never found to have "flouted" or violated a court order during the
proceeding and that during the New York disciplinary proceedings he was never
placed on notice as to what orders he "flouted" or violated warranting attorney
discipline.  (*See* Ex. 14, WV Hearing Transcript.)   This evidence and testimony
were not contested by West Virginia Bar Counsel.  (*See id*.)

- In the New York disciplinary order, the First Department accused Zappin of
  "defaming" the Attorney for the Child.  (*See* Ex. 10, March 8, 2018 Decision and
  Order.)   Zappin presented evidence and testimony that he never "defamed" the
  Attorney for the Child.  (*See* Ex. 14, WV Hearing Transcript.)   He further testified
  that he had never been found to have "defamed" the Attorney for the Child and that
  he had never been placed on notice as to what statements he purportedly made that
  were considered defamatory.  (*See  id*.)   This evidence and testimony were not
  contested by West Virginia Bar Counsel.  (*See id*.)

- In the New York disciplinary order, the First Department accused Zappin of setting
  up a website to disparage the Attorney for the Child.  (*See* Ex. 10, March 8, 2018
  Decision and Order.)  Zappin presented evidence and testimony that he never set
  up such a website.  (*See* Ex. 14, WV Hearing Transcript.)  This evidence and
  testimony were not contested by West Virginia Bar Counsel.  (*See id*.)

- In the New York disciplinary order, the First Department accused Zappin of filing
  a false police report against his ex-wife Ms. Comfort.  (*See* Ex. 10, March 8, 2018
  Decision and Order.)  Zappin presented evidence and testimony that during the New
  York disciplinary proceeding that no copy of a police report was ever placed in the

record, that he was never placed on notice as to what statements he made that constituted a false police report and that he was never given an opportunity to defend the accusation.  (*See* Ex. 14, WV Hearing Transcript.)   This evidence and testimony were not contested by West Virginia Bar Counsel.  (*See id*.)

- In the New York disciplinary order, the First Department accused Zappin of admitting to engaging in "threatening" behavior towards Justice Cooper.  (*See* Ex. 10, March 8, 2018 Decision and Order.)  Zappin presented evidence and testimony that Justice Cooper filed a sham criminal proceeding against him in an attempt to further disparage him publicly, which included e-mails to multiple New York tabloids corroborating these assertions.  (*See* Ex. 14, WV Hearing Transcript.)  This evidence and testimony were not contested by West Virginia Bar Counsel.  (*See id*.)

- In the New York disciplinary order, the First Department asserted that Zappin filed a false disciplinary complaint against Dr. Aaron Metrikin, the expert retained by the Attorney for the Child in *Zappin v. Comfort* (who actually never participated in the child custody trial).  (*See* Ex. 10, March 8, 2018 Decision and Order.)  Zappin presented evidence and testimony that Justice Cooper had made inaccurate and untruthful statements concerning his complaint to the New York Office of Professional Medical Conduct against Dr. Metrikin, which the First Department was apparently relying on in its order.  (*See* Ex. 14, WV Hearing Transcript.)  Additionally, he presented evidence and testimony that he was never given notice during the New York disciplinary proceeding that he was subject to discipline as to

19

my complaint against Dr. Metrikin.  (*See id*.)  This evidence and testimony were not contested by West Virginia Bar Counsel.  (*See id*.)

23.     While the West Virginia reciprocal disciplinary proceeding is still pending and has not yet been decided, the transcript of the hearing before the Hearing Subcommittee unquestionably confirms that:  (i) Zappin was subjected to an unconstitutional attorney disciplinary proceeding in New York:  (ii) Zappin was denied constitutionally required notice and an opportunity to be heard with respect to the assertions of attorney misconduct lodged against him in New York; (iii) Justice Matthew Cooper was a biased and retaliatory arbiter determined to inflict undue harm on Zappin; and (iv) the findings upon which Zappin was found guilty of attorney misconduct on New York were fabricated, untrue and rendered without giving Zappin notice and/or an opportunity to defend himself.

C.     Plaintiff's Standing and Defendants' Abuse of Process and Involvement in the West Virginia Reciprocal Disciplinary Proceeding

24.     While trying to stay in the shadows, Defendants appear to be deeply involved in the West Virginia reciprocal disciplinary proceeding, primarily through their subordinate Staff Attorney Kevin Doyle.

25.     Despite the reciprocal disciplinary proceeding in West Virginia being well underway since March 2018, the Grievance Committee sent a letter to the West Virginia Lawyer Disciplinary Board in May 2018 informing the Board about the March 8, 2018 Decision and Order from the First Department and requesting that reciprocal disciplinary proceedings be instituted based on the order.  (*See* Ex. 15, Grievance Committee Letter.)  Upon information and belief, this letter was sent to the West Virginia Lawyer Disciplinary Board at the direction and behest of Dopico.  Further at the time the letter was sent, Dopico was aware that Plaintiff had been subjected to a sham unconstitutional attorney disciplinary proceeding in New York, that Zappin had been

fundamentally denied Due Process in that proceeding and that Zappin did not engage in the conduct asserted by Justice Cooper in the February 29, 2016 custody decision or the First Department's March 8, 2018 disciplinary decision.

26.     More importantly, Staff Attorney Kevin Doyle (again, Defendants' subordinate) has been in constant contact with Chief Lawyer for the West Virginia Lawyer Disciplinary Board, Rachel Cipoletti.  Indeed, Mr. Doyle and Ms. Cipoletti have exchanged information, coordinated strategy and have worked hand-in-hand in attempting to have Zappin disciplined in West Virginia.[4] Indeed, Mr. Doyle (upon information and belief, on behalf of Defendants) has continued to press and pressure Ms. Cipoletti that she should seek to have Zappin disbarred in West Virginia.  As part of this endeavor, both the Grievance Committee and Ms. Cipoletti continue to conceal information from Zappin, including exculpatory information.  This even includes the communications between Ms. Cipoletti and Mr. Doyle, which are required disclosure under West Virginia law.  Regardless, Defendants and their subordinates are exercising a great deal of influence over the West Virginia reciprocal disciplinary proceedings in an effort to further retaliate against Zappin to have him disciplined and disbarred in that jurisdiction.

## II.     <u>Collateral Estoppel Disciplinary Proceedings as Utilized and Employed by Defendant Dopico, the Grievance Committee and the First Department are Facially Unconstitutional</u>

27.     Collateral estoppel attorney disciplinary proceedings in the First Department are fundamentally and facially unconstitutional.  This is all the more the case where the Grievance Committee, led by Defendants, are using collateral estoppel disciplinary proceedings to retaliate,

---

[4] Notably, the relationship between Kevin Doyle and Rachel Cipoletti goes so far that she recommended an attorney for Mr. Doyle in a proceeding in West Virginia where Zappin sought and obtained a restraining order against Mr. Doyle after he had sent Zappin numerous harassing and threatening messages.

ambush and trap attorneys on behalf of a corrupt state judicial system.  Indeed, the Grievance Committee is again and again bringing collateral estoppel disciplinary proceedings against attorneys based on mere civil rulings where the attorney had no notice that they were subject to disciplinary action when the civil ruling was made.  Then, within the collateral estoppel disciplinary proceedings, the Grievance Committee and the First Department are manufacturing rules and procedures on the fly to ensure that targeted attorneys have no opportunity to defend themselves.  In other words, the Grievance Committee have developed collateral estoppel disciplinary proceedings to impose perfunctory discipline on attorneys without having to abide by its own rules set forth in 22 NYCRR 1240 *et seq.* and denying attorneys the basic tenets of Due Process, *i.e.*, notice and an opportunity to be heard.

28.     As set forth below, collateral estoppel disciplinary proceedings have no basis in the Rules for Attorney Disciplinary Matters codified in 22 NYCRR 1240 *et seq.*  Instead, the rules, procedures and Due Process safeguards in these collateral estoppel attorney disciplinary proceedings are indeterminate, undefined and left largely to the whim of the Grievance Committee and the First Department to craft on the fly and as they see fit.  Inevitably, these rules, procedures and safeguards are nonexistent and attorneys are denied their basic right to notice and an opportunity to defend themselves.  With the lack of consistent rules, procedures and Due Process safeguards, the Grievance Committee and the First Department have turned these collateral estoppel disciplinary proceedings into nothing more than rubber stamp perfunctory proceedings that are wholly divorced from the rules set out in 22 NYCRR 1240 *et seq.* and bear more resemblance to drumhead trials and kangaroo courts.

29.     Indeed, the lack of uniform and pre-defined rules, policies, procedures and Due Process safeguards governing collateral estoppel disciplinary proceedings have left them ripe for

corruption by crooked actors in the Grievance Committee and the state judicial system. Collateral estoppel disciplinary proceedings, something that is nowhere contemplated in the Rules for Attorney Disciplinary Matters codified in 22 NYCRR 1240 *et seq*., are becoming a shortcut of the Grievance Committee to target, harass and attack attorneys and their livelihood without proper Due Process, where many of these attorneys are innocent of any misconduct and have merely caught ire of the judiciary. In other words, collateral estoppel disciplinary proceedings, as currently being used by the Grievance Committee, is nothing more than an instrument of corruption. This is intolerable and must be declared unconstitutional.

30.     <u>First</u>, Dopico and the Grievance Committee are instituting collateral estoppel disciplinary proceedings in such a fashion as to deny attorneys their constitutional right to formal charges. This is precisely what happened in the collateral estoppel disciplinary proceeding initiated against Zappin. Neither Dopico nor the Grievance Committee deny that the proceeding was initiated without serving Zappin formal charges as set forth in 22 NYCRR 1240 *et seq*.

31.     The United States Supreme Court has held that since attorney disciplinary proceedings are of a "quasi-criminal nature … [t]he charges must be known before the proceedings commence" against an attorney. *Ruffalo*, 390 U.S. at 551. Upon information and belief, Dopico and the Grievance Committee have routinely initiated collateral estoppel disciplinary proceedings against attorneys without affording them formal charges. Such a practice has become a *de facto* policy of the Grievance Committee and Dopico's office. Collateral estoppel attorney disciplinary proceedings initiated in such a fashion as to deny an attorney their right to formal charges are necessarily and facially unconstitutional.

32.     <u>Second</u>, Dopico and the Grievance Committee are instituting collateral estoppel disciplinary proceedings against attorneys who had no notice in the underlying or prior proceeding

that they would be subject to perfunctory attorney discipline based on a civil ruling in the underlying or prior proceeding.  Given that collateral estoppel disciplinary proceedings are dependent upon other prior litigation, attorneys are routinely and consistently being subjected to collateral estoppel disciplinary proceedings without having been placed on notice in the prior litigation that they may face disciplinary action based on the findings in the prior action and be collaterally estopped from challenging those findings.

33.     Once again, this is precisely what happened in the proceeding initiated against Zappin.  Neither Dopico nor the Grievance Committee deny that Zappin was never afforded notice at any point during the *Zappin v. Comfort* child custody proceeding that Justice Cooper's findings could or would be later used preclusively against him in a disciplinary proceeding, much less a collateral estoppel disciplinary proceeding divorced from the Rules Governing Attorney Matters set forth in 22 NYCRR 1240 *et seq*.  In other words, Zappin was unconstitutionally ambushed and blindsided by the Grievance Committee's collateral estoppel attorney disciplinary proceeding.

34.     An attorney is fundamentally entitled to fair notice that he may face disciplinary action in a proceeding.  *See Ruffalo*, 390 U.S. at 551.  Dopico and the Grievance Committee's institution of collateral estoppel disciplinary proceedings where an attorney had no notice (and consequently, no opportunity to defend himself) in the underlying proceeding that he or she could face disciplinary action in a preclusive collateral estoppel disciplinary action is facially unconstitutional.  Upon information and belief, initiating collateral estoppel disciplinary proceedings against attorneys regardless of whether they had prior notice of potential disciplinary action in the underlying proceeding has become a *de facto* policy of the Grievance Committee and Dopico's office.  This scheme necessarily and fundamentally violates Due Process as such collateral estoppel proceedings are unconstitutional "traps" prohibited by the United States

Supreme Court.  *See Ruffalo*, 390 U.S. at 551 ("The charge must be known before the proceedings commence.  They become a trap, when after they are underway, the charges are amended on the basis of testimony of the accused.  He can then be given no opportunity to expunge the earlier statements and start afresh.")

35.    <u>Third</u>, collateral estoppel disciplinary proceedings as currently initiated and used by Dopico, the Grievance Committee and the First Department deny attorneys their constitutional right to meaningfully defend themselves in the context of a hearing before the disciplinary authority and their constitutional right to a fact-finder.  In these proceedings, attorneys are denied their right to a fair hearing to present evidence in their defense before the disciplinary authority, despite the fact that one is required by the Rules for Attorney Disciplinary Matters codified in 22 NYCRR 1240 *et seq*.  In other words, attorneys subjected to such collateral estoppel disciplinary proceedings are denied their right to present tangible evidence, to testify, to cross-examine adverse witnesses, to compel testimony, to compel evidence, to call witnesses in their defense and to present argument before the disciplinary authority.  Instead, Defendant Dopico, the Grievance Committee and the First Department unconstitutionally rely on civil proceedings and trials that provide far less protections and Due Process safeguards than what an attorney would otherwise have before the disciplinary authority.  Indeed, Dopico, the Grievance Committee and the First Department have lawlessly fashioned these proceedings without approval of the legislature or rulemaking authority in such a way that an attorney subjected to a collateral estoppel disciplinary proceeding has no outlet to challenge the merits of the accused misconduct, much less challenge the merits of the accused misconduct before a disciplinary authority with rules and procedures that provide far more stringent Due Process protections.

36.     Moreover, an accused attorney subjected to such a collateral estoppel disciplinary proceeding has no right to a hearing to present evidence and testimony that collateral estoppel should not be applied.  In that same vein, an attorney subject to such a proceeding is necessarily denied his right to a fact-finder with respect to the application of collateral estoppel.  Rather, collateral estoppel disciplinary proceedings as informally fashioned by Dopico, the Grievance Committee and the First Department are perfunctory proceedings that take place before a panel of the First Department entirely on paper.  When there is a challenge to the application of collateral estoppel in one of these proceedings, the First Department provides no means or mechanism to allow an accused attorney to gather or present factual evidence or testimony in support of the contention that collateral estoppel should not apply.

37.     Once again, in the collateral estoppel proceeding initiated against Zappin, he was afforded no hearing before a disciplinary authority either to contest the merits of the assertions of misconduct levied against him or to present evidence and testimony in support of his contention that collateral estoppel should not apply.  In this respect, Zappin was denied his right to a fair opportunity to be heard as well as his constitutional right to a fact-finder.

38.     Upon information and belief, initiating collateral estoppel disciplinary proceedings against attorneys where they are precluded from having a hearing on the merits before the disciplinary authority has become the *de facto* practice in the First Department as utilized by Dopico and the Grievance Committee.  Likewise, upon information and belief, initiating collateral estoppel disciplinary proceedings against attorneys where they are precluded from having a fact hearing as to whether collateral estoppel should be applied has become the *de facto* practice in the First Department as utilized by Dopico and the Grievance Committee.  And, in such proceedings, an attorney is necessarily denied his or her constructional right to a fact-finder before the

disciplinary authority.  Such collateral estoppel disciplinary proceedings necessarily infringe on an attorney's right to Due Process and are facially unconstitutional.

39.     Fourth, as a corollary to the third stated contention above, the *de facto* rules and procedures in collateral estoppel disciplinary matters are unconstitutionally inconsistent with the Rules Governing Attorney Disciplinary Matters set forth in 22 NYCRR 1240 *et seq*.  Put another way, collateral estoppel disciplinary proceedings are facially unconstitutional where attorneys subjected to such proceedings based on findings made in civil matters are provided far less Due Process protections than what is provided to attorneys convicted of crimes.

40.     This unconstitutionally inconsistent scheme is exemplified how the rules treat an attorney convicted of a "serious crime" and "crime."  22 NYCRR 1240.12(b)(1) provides the following procedure for an attorney convicted of a non-serious crime:

> If the Committee concludes that the crime in question is not a felony or serious crime, it may take any action it deems appropriate pursuant to section 1240.7.

In other words, 22 NYCRR 1240.7 requires that the Grievance Committee serve the convicted attorney with formal charges, entitles the convicted attorney to discovery, a contested evidentiary hearing before a referee and written findings of fact.  Similarly, 22 NYCRR 1240.12(c)(2) provides that an attorney convicted of a "serious crime" is entitled to an opportunity to be heard, an evidentiary show cause hearing as to why a final order imposing discipline should not be made and a referral to a referee or judge for hearing and a written report and recommendation.  In other words, an attorney convicted of a serious crime under the rules is entitled to a contested evidentiary hearing before a referee as to why he did not engage in misconduct and/or why he should not be disciplined.

41.     The rules are consequently in constitutional conflict with the scheme in collateral estoppel attorney disciplinary proceedings brought by Dopico and the Grievance Committee,

which take place in the First Department.  While an attorney convicted of a "crime" or "serious crime" is entitled to substantial procedural Due Process protections under the Rules Governing Attorney Disciplinary Matters set forth in 22 NYCRR 1240 *et seq*. such as formal charges, discovery and a contested hearing, not a single one of these safeguards exists for an attorney faced with a collateral estoppel petition from the Grievance Committee based on a civil findings.  This is illustrated by the collateral estoppel disciplinary proceeding Zappin was subjected to by Dopico, the Grievance Committee and the First Department.

42.     It cannot be said that the collateral estoppel attorney disciplinary scheme as utilized by Defendant Dopico and the Grievance Committee in the First Department is constitutional when it affords overwhelming less Due Process protections and safeguards to an attorney facing prosecution based on a civil findings – including denying the attorney his right to formal charges and a contested hearing – than what the New York Rules Governing Attorney Disciplinary Matters provide for an attorney convicted of a "crime" or "serious crime" beyond a reasonable doubt before a criminal jury.  As a result, the *de facto* policies, procedures and rules implemented in collateral estoppel disciplinary proceedings are facially unconstitutional where they afford less Due Process safeguards and protections to an attorney prosecuted based on a civil findings (where the burden of proof is merely a preponderance of the evidence) than what is provided for an attorney prosecuted based on a criminal conviction of a "crime" or "serious crime" (where the burden of proof is far greater requiring a jury to convict a defendant beyond a reasonable doubt).

43.     <u>Fifth</u>, collateral estoppel disciplinary proceedings in the First Department are unconstitutionally vague because they wholly lack any rules, procedures or guidelines.  There is no authority in the Rules for Attorney Disciplinary Matters codified in 22 NYCRR 1240 *et seq*. that provides any authority or jurisdiction for such proceedings.  As a result, there are no rules or

procedures that govern them.  These facts have been conceded by Dopico and the Grievance Committee.  Indeed, these facts have been written about extensively by New York disciplinary scholars:

> [T]he absence of procedural rules governing collateral estoppel [disciplinary proceedings] is a lacuna which ought to be filled … Just as procedural rules cover the process of determining the preclusive effect of a criminal conviction or discipline in a foreign jurisdiction (reciprocal jurisdiction), so too there should be rules governing the standards and procedures to be followed whenever a disciplinary or grievance committee applies for a determination of collateral estoppel following a civil finding of misconduct by a lawyer.

"'Dunn':  Collateral Estoppel and Attorney Discipline," by Hal R. Lieberman (2015) *available at* http://nylegalethics.attorney/dunn-collateral-estoppel-and-attorney-discipline.

44.     As a result, an attorney does not know what types of civil findings may subject him or her to discipline by collateral estoppel, what Due Process safeguards he or she is entitled to during the proceeding or even what the manner and timeframe of the proceeding is supposed to adhere to before the First Department.   Indeed, because collateral estoppel disciplinary proceedings are not provided for in Rules for Attorney Disciplinary Matters codified in 22 NYCRR 1240 *et seq*., an attorney is not even afforded constitutionally adequate notice that he may be subject to such a proceeding.  Subjecting attorneys to proceedings that are entirely devoid of formal rules and procedures must necessarily be facially unconstitutional as void for vagueness.  *See Coats v. City of Cincinnati*, 402 U.S. 611, 614 (U.S. 1971) (holding that a procedure or statute is unconstitutionally void for vagueness if "it specifies no guide or standard at all"); *see also Giacco v. Pennsylvania*, 322 U.S. 399, 402-03 (U.S. 1966) (holding that a law is void for vagueness "if it is so vague and standard less that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standard what is prohibited and what is not in each particular case"); *Greenville Women's Clinic v. Comm'r SC Dept. of Health &*

*Environmental Control*, 317 F.3d 357, 367 (4th Cir. 2002) (holding that a regulation or procedure is void for vagueness if "it is so standard less that it enable arbitrary and discriminatory enforcement").

45.     <u>Sixth</u>, collateral estoppel disciplinary proceedings as utilized by Dopico and the Grievance Committee are facially unconstitutional where the First Department issues effectively one-to-two sentence decisions as to the application of collateral estoppel.   Dopico and the Grievance Committee have conceded that such orders are regularly issued, routine and the *de facto* practice of the First Department in collateral estoppel disciplinary proceedings.  (*See* Ex. 8, Doyle Opposition.)  These orders deprive a litigant of fair notice of the facts which the First Department relied upon in finding the attorney guilty of attorney misconduct, particularly when such facts are pertinent to imposing a sanction.  Furthermore, where the decisions are devoid of any reasoning or analysis, it deprives a litigant of his right to fair appellate review and/or review in other jurisdictions where reciprocal discipline could be imposed.   This is particularly so where a complicated and fact intensive doctrine such as collateral estoppel is involved.  As such, the First Department's perfunctory orders in collateral estoppel disciplinary decisions devoid of any factual recitation, reasoning or analysis render such proceedings facially unconstitutional where such orders are *de facto* practice by the First Department.

46.     <u>Lastly</u>, as touched upon above, the Dopico and the Grievance Committee are initiating collateral estoppel disciplinary proceedings against attorneys despite the fact that the underlying civil action afforded them substantially less Due Process safeguards than they would have otherwise received in a formal contested disciplinary proceeding under the Rules for Attorney Disciplinary Matters.  By way of example, collateral attorney disciplinary proceedings are being asserted against attorneys who are the subject of adverse findings in matrimonial actions where

the attorney was not entitled to pre-trial disclosure, where the matrimonial court could rely on hearsay from the Attorney for the Child and forensic custody evaluator and where the court employed an indeterminate standard of "best interests of the child" in rendering a decision to name a few examples. It goes without saying that an attorney would be afforded far more stringent Due Process safeguards and procedures in an original proceeding before the disciplinary authority. *See* 22 NYCRR 1240 *et seq.*

47.     It is fundamental infringement upon an attorney's right to Due Process where discipline is imposed on him based on a finding in a proceeding that afforded him substantially less Due Process protections than what he would have otherwise received in an original action before the disciplinary authority. Upon information and belief, Dopico and the Grievance Committee have a *de facto* policy of initiating collateral estoppel disciplinary proceedings against attorneys regardless of whether the underlying proceeding afforded the attorney substantially less Due Process safeguards and protections than what would be afforded to him in an original disciplinary action brought under 22 NYCRR 1240 *et seq.* Such collateral estoppel disciplinary proceedings are necessarily and fundamentally unconstitutional.

48.     Based on these facts, which are by and large uncontested, the collateral estoppel disciplinary scheme utilized and employed by Dopico as well as the Grievance Committee and the First Department is facially unconstitutional. Zappin therefore requests that collateral estoppel disciplinary proceedings be declared facially unconstitutional for the reasons set forth above.

### III.     Zappin Is Entitled to the Production of Any and All Exculpatory Evidence in the Possession of Defendant Dopico, Defendant Collazo and the Grievance Committee

49.     As set forth above in Section I, there is clear, convincing and quite frankly overwhelming evidence that Zappin did not commit the acts asserted by Justice Cooper or the First Department upon which attorney discipline was imposed. Indeed, there is reason to believe that

Dopico, Collazo and the Grievance Committee are in possession of a glut of documents and evidence showing Zappin's innocence with respect to the accusations of attorney misconduct levied in the collateral estoppel disciplinary proceeding that was lodged against him. To put it another way, Dopico, Collazo and the Grievance Committee are in possession of exculpatory evidence.

50.     Throughout the collateral estoppel disciplinary proceeding, Zappin requested that the Grievance Committee produce all exculpatory evidence in its possession. (*See, e.g.*, Ex. 3, Zappin Motion.[5]) The Grievance Committee ignored Zappin's requests. However, the Grievance Committee never once denied that it was in possession of exculpatory evidence. (*See, e.g.*, Ex. 4, Doyle Opposition.)

51.     In fact, the Grievance Committee did everything in its power to conceal any and all information from Zappin. During the course of both the "*sua sponte*" investigation initiated in October 2015[6] and the collateral estoppel disciplinary proceeding, the Grievance Committee failed to produce a single document to Zappin. With respect to the "*sua sponte*" investigation, the Grievance Committee, Dopico and his Staff Attorney Kevin Doyle unethically characterized it as a "*sua sponte*" investigation despite the fact that it was apparently based on complaints made by Justice Deborah Kaplan, Justice Matthew Cooper, Claire Comfort, Brian Comfort, Robert Wallack

---

[5] Notably, Zappin requested that the First Department direct the Grievance Committee to produce all exculpatory evidence within its possession. (*See* Ex. 3, Zappin Motion.) The First Department failed to address Zappin's request for relief. (*See* Ex. 10, March 8, 2019 Decision and Order.)

[6] In October 2015, the Grievance Committee initiated a "*sua sponte*" investigation against Zappin. (*See* Ex. 16, *Sua Sponte* Letter.) The investigation was brought in retaliation against Zappin for his filing of the Court of Claims action against Justice Deborah Kaplan. The investigation resulted in no charges and, as later admitted by Staff Attorney Kevin Doyle in a proceeding before the First Department in October 2017, there was no basis to assert Zappin had committed any acts of attorney misconduct as to the "*sua sponte*" investigation.

and Harriet Newman Cohen (all parties involved in the *Zappin v. Comfort* matrimonial action). (*See* Ex. 16, *Sua Sponte* Letter.)   They characterized the investigation as "*sua sponte*" to specifically prevent Zappin from obtaining any complaints filed by Justice Kaplan, Justice Cooper, Ms. Comfort, Mr. Comfort, Mr. Wallack and Ms. Cohen as well as Staff Attorney Kevin Doyle's communications with them leading to the "*sua sponte*" investigation, which would have likely had adverse effects on their positions in the ongoing litigations.

52.    Similarly, Dopico, Collazo, Staff Attorney Kevin Doyle and the Grievance Committee failed to serve Zappin with formal charges in connection with the collateral estoppel disciplinary proceeding in an effort to avoid triggering any disclosure requirements set forth in 22 NYCRR 1240 *et seq*.   Indeed, had formal charges been served under 22 NYCRR 1240 *et req*., disclosure would have been triggered requiring Defendant Dopico, Defendant Collazo and the Grievance Committee to produce communications between the Grievance Committee and Justice Cooper, Ms. Comfort, Mr. Comfort, Mr. Wallack, Ms. Cohen and David Evan Schorr.   Many of these communications would have negated any assertion of misconduct by Zappin and would have been directly relevant to the issue of whether Zappin received a full and fair opportunity to be heard in the *Zappin v. Comfort* child custody proceeding, the second prong of any collateral estoppel analysis.

53.    Upon information and belief, Zappin believes that Dopico, Collazo and the Grievance Committee are in possession of exculpatory documents and communications exchanged between the Grievance Committee (namely Staff Attorney Kevin Doyle) and Justice Matthew Cooper.   Upon information and belief, Zappin believes at least the following documents and communications exist:

- Communications between Staff Attorney Kevin Doyle and Justice Cooper strategizing as to imposing the September 18, 2015 sanction on Zappin and subsequently opening up a disciplinary investigation against Zappin;

- Communications between Staff Attorney Doyle and Justice Cooper strategizing as to the *Zappin v. Comfort* child custody trial and the subsequent bringing of a collateral estoppel disciplinary proceeding against Zappin based on the findings from that trial;

- Communications between Staff Attorney Doyle and Justice Cooper discussing and strategizing with respect to the *Zappin v. Comfort* financial trial that took place in June 2016;

- Communications between Staff Attorney Doyle and Justice Cooper discussing and strategizing with respect to Justice Cooper seeking criminal charges against Zappin. In connection with that, communications between Staff Attorney Doyle and Justice Cooper discussing Staff Attorney Doyle accusing Zappin of filing a false police report against Ms. Comfort in Washington, DC within the collateral estoppel disciplinary proceeding to be used as evidence in the criminal proceeding Justice Cooper filed against Zappin accusing him of false reporting; and

- Documents and communications in the possession of Staff Attorney Kevin Doyle and Dopico evidencing that Justice Cooper's findings in the February 29, 2016 *Zappin v. Comfort* custody decision lacked factual substance and merit and that the findings were largely fabricated.

To the extent any exculpatory communications, documents and/or evidence exists in connection with Staff Attorney Kevin Doyle and his communications or interactions with Justice Matthew Cooper, Due Process requires that they be produced to Zappin.

54.     Upon information and belief, Zappin believes that Dopico, Collazo and the Grievance Committee are in possession of exculpatory documents and communications exchanged between the Grievance Committee (namely Staff Attorney Kevin Doyle) and Claire Comfort, Brian Comfort, Robert Wallack and Harriet Newman Cohen.  Upon information and belief, Zappin believes at least the following documents and communications exist:

- Communications between Staff Attorney Kevin Doyle and Ms. Comfort, Mr. Comfort, Mr. Wallack and/or Ms. Cohen strategizing as to the *Zappin v. Comfort* proceeding, how to trigger Justice Cooper imposing sanctions against Zappin and subsequently opening up a disciplinary investigation against Zappin;

- Communications between Staff Attorney Kevin Doyle and Ms. Comfort, Mr. Comfort, Mr. Wallack and/or Ms. Cohen strategizing as to the *Zappin v. Comfort* child custody proceeding and how to use to the proceeding to bring subsequent disciplinary action against Zappin;

- Documents and communications in the possession of Staff Attorney Kevin Doyle and Dopico showing that suppressed information and evidence pertaining to unethical and unlawful conduct by Ms. Comfort, Mr. Comfort, Mr. Wallack and/or Ms. Cohen in an effort to bring disciplinary action against Zappin; and

- Documents and communications in the possession of Staff Attorney Kevin Doyle and Dopico evidencing that Ms. Comfort, Mr. Comfort, Mr. Wallack and/or Ms. Cohen entered into a *de facto* scheme with Staff Attorney Doyle to unjustly and

unlawfully bring disciplinary action against Zappin and to manipulate the *Zappin v. Comfort* matrimonial proceeding to accomplish this goal.

To the extent any exculpatory communications, documents and/or evidence exists in connection with Staff Attorney Kevin Doyle and his communications or interactions Claire Comfort, Brian Comfort, Robert Wallack and/or Harriet Newman Cohen, Due Process requires that they be produced to Zappin.

55.     Upon information and belief, Zappin believes that Dopico, Collazo and the Grievance Committee are in possession of exculpatory documents and communications exchanged between the Grievance Committee (namely Staff Attorney Kevin Doyle) and David Schorr.  Upon information and belief, Zappin believes at least the following documents and communications exist:

- Documents and communications between Staff Attorney Kevin Doyle and Mr. Schorr evidencing a scheme whereby Mr. Schorr would delete exculpatory evidence in his possession (*i.e.*, the metadata to Claire Comfort's purported domestic violence photographs);

- Documents and communications between Staff Attorney Kevin Doyle and Mr. Schorr evidencing a scheme whereby Mr. Schorr would take certain actions in the *Zappin v. Comfort* proceeding to the detriment of Zappin in return for favorable treatment by the Grievance Committee in Mr. Schorr's own disciplinary proceeding; and

- Documents and communications between Staff Attorney Kevin Doyle and Mr. Schorr evidencing a scheme whereby Mr. Schorr would refuse to undertake any action that would assist Zappin in the collateral estoppel disciplinary action in

return for favorable treatment by the Grievance Committee in Mr. Schorr's own disciplinary proceeding.

To the extent any exculpatory communications, documents and/or evidence exists in connection with Staff Attorney Kevin Doyle and his communications or interactions David Schorr, Due Process requires that they be produced to Zappin.

56.   Upon information and belief, Zappin believes that Dopico, Collazo and the Grievance Committee are in possession of exculpatory documents, materials and communications relating to Collazo's execution of the affirmation accompanying the April 22, 2016 collateral estoppel petition filed in *Matter of Zappin*.  Specifically, Zappin believes that Dopico, Collazo and the Grievance Committee are in possession of documents, materials and communications that tend to show Collazo, Dopico and Staff Attorney Doyle were aware that the Justice Cooper's findings relied upon in the April 22, 2016 collateral estoppel petition lacked factual merit and substance and that they were effectively fabricated by Justice Cooper.  Due process requires that these documents be produced to Zappin.

57.   Upon information and belief, Zappin believes that Dopico, Collazo and the Grievance Committee are in possession of other materials, documents and communications that may exculpate Zappin in connection with the accusations of attorney misconduct in the collateral estoppel disciplinary proceeding initiated against him as well as in the reciprocal disciplinary action currently pending in West Virginia.

58.   Zappin asserts that it is a violation of Due Process for Dopico, Collazo and the Grievance Committee to withhold and fail to produce exculpatory evidence in their possession.

**COUNT I:**
## VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS – DUE PROCESS
**(Defendant Jorge Dopico)**

59.     Zappin re-alleges and incorporates by reference paragraphs 1 - 58 as if fully set forth herein.

60.     Defendant Dopico, by and through his position as Chief Attorney for the Attorney Grievance Committee for the First Judicial Department, has perpetuated and undertaken a scheme of prosecuting attorneys through the use of the doctrine of collateral estoppel that is facially unconstitutional.

61.     The collateral estoppel attorney disciplinary scheme utilized and employed by Defendant Dopico systematically denies attorneys their constitutional right to formal notice of charges as well as a meaningful opportunity to defend themselves.

62.     The collateral estoppel attorney disciplinary scheme utilized and employed by Defendant Dopico denies attorneys their constitutional right to a hearing before the disciplinary authority, their constitutional right to present evidence and testimony negating the application of collateral estoppel and their right to a fact-finder.

63.     The collateral estoppel attorney disciplinary scheme utilized and employed by Defendant Dopico is unconstitutionally inconsistent with the Rules Governing Attorney Disciplinary Matters set forth in 22 NYCRR 1240 *et seq*.

64.     The collateral estoppel attorney disciplinary scheme is unconstitutionally vague as there are no rules, procedures or guidelines sufficient to place an attorney on notice that he may be subject to such a proceeding or what rules and procedures are to applied in such a proceeding.

As a result, collateral estoppel disciplinary proceedings in the First Department have no mechanism to ensure consistent Due Process safeguards are employed in such proceedings.

65.     The collateral estoppel attorney disciplinary scheme is facially unconstitutional where an attorney subject to such a proceeding based on a civil finding is afforded substantially less Due Process safeguards than an attorney subject to a disciplinary action based on a conviction of a crime or "serious crime."

66.     The collateral estoppel attorney disciplinary scheme is facially unconstitutional where the doctrine of collateral estoppel is being systematically used to find attorneys guilty of professional misconduct based on findings in civil proceedings where such civil proceedings afford an attorney substantially less Due Process safeguards than what an attorney would have received in a formal contested disciplinary proceeding.

67.     As a consequence, Zappin requests that the Court declare the collateral estoppel attorney disciplinary scheme employed by the Attorney Grievance Committee for the First Judicial Department and the Supreme Court of the State of New York, Appellate Division, First Department facially unconstitutional.

## COUNT II:
## VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS – DUE PROCESS
### (Defendants Dopico and Collazo)

68.     Zappin re-alleges and incorporates by reference paragraphs 1 - 67 as if fully set forth herein.

69.     Upon information and belief, Defendant Dopico and Defendant Collazo by virtue of their position at the Attorney Grievance Committee for the First Judicial Department are in possession (actually and constructive) of exculpatory documents, materials, communications and

evidence tending to show that Zappin is not guilty of the attorney misconduct set forth in the First Department's March 8, 2018 Decision and Order in *Matter of Zappin*.

70.      Such exculpatory documents, materials, communications and evidence were relevant to the *Matter of Zappin* proceeding.  The failure of Defendant Dopico and Defendant Collazo to produce such information infringed on Zappin's constitutional right to Due Process.

71.      Such exculpatory documents, materials, communications and evidence are relevant to the current reciprocal disciplinary proceeding Zappin is facing in West Virginia.  The failure of Defendant Dopico and Defendant Collazo to produce such information infringed on Zappin's constitutional right to Due Process.

72.      As a consequence, Zappin requests that the Court declare Defendants' withholding and failure to produce exculpatory evidence with respect to Zappin in unconstitutional.  Zappin further requests that the Court direct Defendants to produce all exculpatory evidence in their possession (actual and constructive), custody and/or control.

## COUNT III:
## 42 U.S.C. § 1983 – FAILURE TO PRODUCE EXCULPATORY EVIDENCE
### (Defendants Dopico and Collazo)

73.      Zappin re-alleges and incorporates by reference paragraphs 1 - 72 as if fully set forth herein.

74.      As set forth above, Defendants Dopico and Collazo are in possession of exculpatory evidence as it relates to the assertions of attorney misconduct in the collateral estoppel proceeding *Matter of Zappin*.

75.      Defendants Dopico and Collazo have a constitutional duty to produce exculpatory evidence to an attorney subjected to a attorney disciplinary proceeding.  Defendants have failed fulfil their constitutional duty to produce to Zappin the exculpatory evidence in their possession.

In doing so, Defendants have violated Plaintiff's constitutional rights, including but not limited to his right to Due Process.

76.     At all times, Defendants Dopico and Collazo engaged in the actions violating Zappin's constitutional rights while acting under color of state law in their capacity as Chief Attorney and Chairman, respectively, of the Attorney Grievance Committee for the First Judicial Department.

77.     As a result of Defendant Dopico and Collazo's failure to produce exculpatory documents to Zappin as constitutionally required, Zappin has suffered damages. Such exculpatory evidence was material to Zappin's defense in the New York collateral estoppel disciplinary proceeding as well as the Zappin's defense in the reciprocal disciplinary proceeding currently pending in West Virginia. Zappin seeks damages pursuant to 42 U.S.C. § 1983 in an amount to be determined at trial.

### COUNT IV:
### 42 U.S.C. § 1983 – ABUSE OF PROCESS
#### (Defendants Dopico and Collazo)

78.     Zappin re-alleges and incorporates paragraphs 1 – 77 as if fully set forth herein.

79.     As set forth above, Defendants Dopico and Collozo, either personally or through their subordinates, representatives and counsel, have engaged in unlawful, tortious and abusive actions in violation of Plaintiff's constitutional rights with respect to the reciprocal disciplinary proceeding initiated against Zappin in West Virginia as a result of the collateral estoppel disciplinary action filed against him by Defendants in the First Department. Namely, Defendants have effectively filed a complaint in the form of their May 2018 letter to the West Virginia Lawyer Disciplinary Board requesting that reciprocal discipline be imposed on Zappin. Further, Defendants, both personally and through their subordinates, have interfered with the proceedings

by coordinating, strategizing and pressuring West Virginia Disciplinary Counsel to seek reciprocal discipline, namely disbarment, and threaten new disciplinary charges.  As a result of the May 2018 letter and Defendants' continued interference, Zappin continues to be subjected to a reciprocal disciplinary proceeding in West Virginia and faces potential attorney discipline in West Virginia.

80.      Defendants Dopico and Collazo are aware that Zappin was subjected to an unconstitutional proceeding in the New York collateral estoppel disciplinary proceeding, that Zappin was denied Due Process in the New York collateral estoppel disciplinary proceeding and that Zappin did not engage in the conduct set forth in Justice Cooper's February 29, 2016 child custody decision relied upon in the April 22, 2016 Collateral Estoppel Petition or in the March 8, 2018 disciplinary decision of the First Department in *Matter of Zappin*.

81.      Defendants Dopico and Collazo have engaged in the unlawful, tortious and abusive actions violating Zappin's constitutional rights for an ulterior, collateral and/or improper purpose.  This ulterior, collateral and/or improper purpose is predominantly to retaliate against Zappin for his exercising his First Amendment right to petition and right to free speech.

82.      At all times, Defendants Dopico and Collazo engaged in the unlawful, tortious and abusive actions violating Zappin's constitutional rights while acting under color of state law in their capacity as Chief Counsel and Chairman, respectively, of the Attorney Grievance Committee for the First Judicial Department.

83.      As a result, Zappin has suffered damages as a result of Defendant Dopico and Collazo's tortious conduct.  Zappin seeks damages pursuant to 42 U.S.C. § 1983 in an amount to be determined at trial.

**COUNT V:**
**42 U.S.C. § 1983 – CONSPIRACY ABUSE OF PROCESS**
**(Defendants Dopico and Collazo)**

84.     Zappin re-alleges and incorporates paragraphs 1 – 83 as if fully set forth herein.

85.     As set forth above, Defendants Dopico and Collozo, either personally or through their subordinates, representatives and counsel, have engaged in unlawful, tortious and abusive actions in violation of Plaintiff's constitutional rights with respect to the reciprocal disciplinary proceeding initiated against Zappin in West Virginia as a result of the collateral estoppel disciplinary action filed against him by Defendants in the First Department.  Defendants, both personally and through their subordinates, have conspired with West Virginia Disciplinary Counsel to unjustly and wrongfully seek reciprocal discipline, namely disbarment against Zappin. As a result of this ongoing conspiracy, Zappin continues to be subjected to a reciprocal disciplinary proceeding in West Virginia and faces potential attorney discipline in West Virginia.

86.     Defendants Dopico and Collazo as well as their co-conspirator West Virginia Disciplinary Counsel are aware that Zappin was subjected to an unconstitutional proceeding in the New York collateral estoppel disciplinary proceeding, that Zappin was denied Due Process in the New York collateral estoppel disciplinary proceeding and that Zappin did not engage in the conduct set forth in Justice Cooper's February 29, 2016 child custody decision relied upon in the April 22, 2016 Collateral Estoppel Petition or in the March 8, 2018 disciplinary decision of the First Department in *Matter of Zappin*.  As set forth above in this Complaint, neither Defendants nor West Virginia Disciplinary Counsel deny these facts.

87.     Defendants Dopico and Collazo have engaged in the unlawful, tortious and abusive actions violating Zappin's constitutional rights for an ulterior, collateral and/or improper

purpose.  This ulterior, collateral and/or improper purpose is predominantly to retaliate against Zappin for his exercising his First Amendment right to petition and right to free speech.

88.      At all times, Defendants Dopico and Collazo engaged in the unlawful, tortious and abusive actions violating Zappin's constitutional rights while acting under color of state law in their capacity as Chief Attorney and Chairman, respectively, of the Attorney Grievance Committee for the First Judicial Department

89.      As a result, Zappin has suffered damages as a result of Defendant Dopico and Collazo's tortious conduct.  Zappin seeks damages pursuant to 42 U.S.C. § 1983 in an amount to be determined at trial.

## JURY TRIAL DEMANDED

Plaintiff Anthony Zappin demands a jury trial on all issues which may be properly tried by a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Anthony Zappin prays that this Court:

(a)  Enter judgment in favor of Plaintiff against Defendants;

(b)      Enter judgment awarding Plaintiff declaratory relief that the collateral estoppel attorney disciplinary scheme employed by the Attorney Grievance Committee for the First Judicial Department and the Supreme Court of the State of New York, Appellate Division, First Department is facially unconstitutional;

(c)      Enter judgment declaring that the Defendants' withholding of exculpatory evidence as to Plaintiff in the attorney disciplinary proceeding *Matter of Zappin* is unconstitutional and directing the production of all exculpatory evidence in Defendants' possession, custody and control;

(d)     Enter judgment award Plaintiff compensatory damages on Counts III-V to compensate Plaintiff for Defendants' activity complained of herein and for any injury complained of herein, inclusive of interest and costs, in an amount to be determine a trial;

(e)     Enter judgment awarding punitive, exemplary, enhanced and/or treble damages as allowed by applicable state and federal law in an amount to be determined at trial;

(f)      Enter judgment awarding Plaintiff his fees and costs reasonably incurred in this action as allowed by applicable state and federal law; and

(g) Order such other relief that the Court deems just and proper.


Dated: January 31, 2020
          Huntington, WV


_____
ANTHONY ZAPPIN
1827 Washington Blvd.
Huntington, WV 25701
(843) 520-6303 (tel.)
anthony.zappin@gmail.com
*Plaintiff, Pro Se*